UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *ex rel.* PATRICK GRIFFIS, and PATRICK GRIFFIS, individually, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:10-CV-204-TRM-DCP |
| EOD TECHNOLOGY, INC. (N/K/A JANUS GLOBAL OPERATIONS LLC), | ) ) ) ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Relator's Motion for Leave to File Third Amended Complaint [Doc. 220]. Defendant responded in opposition to the motion [Doc. 224]. Relator filed a reply [Doc. 226]. The motion is ripe for adjudication. *See* E.D. Tenn. L.R. 7.1(a). For the reasons set forth below, the Court **GRANTS** the motion [**Doc. 220**].

**I.  POSITIONS OF THE PARTIES**

Relator seeks leave to file a Third Amended Complaint "(1) to amend and clarify his allegations regarding Defendant's misrepresentations regarding the nature of its workforce and the corresponding fraudulently inflated costs and prices submitted to the Government; (2) to include misrepresentations made by [Defendant] in its proposal for the Rusafa Rule of Law Contract in which it falsely asserted that it would be providing paid home leave for its third country national ("TCN") workers; and (3) to clarify that Count III includes factually false claims under all

contracts at issue in this case" [Doc. 220 p. 1]. For grounds, Relator states that during the discovery phase in this case, he "uncovered additional details regarding [Defendant's] fraudulent schemes" [*Id.* at 2]. Relator explains:

> Specifically, Relator previously alleged that [Defendant] falsely represented to the Government that it would employ and not subcontract the security labor it would use to do the work under the Rusafa Contract. The [Second Amended Complaint] provided details as to that allegation with respect to TCN workers from Uganda; Relator seeks to add the fact that [Defendant's] false representations in its Rusafa Rule of Law ("Rusafa") Contract proposal and in its Rusafa invoices also included workers from other countries, known as other country nationals ("OCNs").
>
> Relator also uncovered additional fraud in the form of misrepresentations to the Government regarding TCN benefits which [Defendant] promised but did not provide, specifically, airfare costs associated with TCN "home leave." These costs were presented to the Government as a benefit which would improve TCN morale; however, they were never actually provided by [Defendant], and the Government relied upon these misrepresentations when awarding the Rusafa Contract.

[*Id.* at 2–3 (footnote omitted)]. With respect to the third category of amendments, Relator seeks to clarify it "to include all of the contracts at issue in the [Second Amended Complaint] and not just Contract 18, Task Order 21" [*Id.* at 3]. He claims that he "could not have reasonably identified these additional frauds until [he] reviewed the documents produced by [Defendant] in discovery" [*Id.*]. According to Relator, "[Defendant] will not be prejudiced by the proposed amendment because it has been in possession of the same documents that allowed Relator to identify these additional facts/frauds" [*Id.*]. In addition, Relator states that "there is ample time for [Defendant] to prepare its defense relating to these additional facts as evinced by the fact that [his] motion is timely" pursuant to the Scheduling Order [*Id.*].

Defendant objects to Relator's amendments based on undue delay and prejudice [Doc. 224]. With respect to undue delay, Defendant argues that Relator failed to "identify what the new

information is or when he allegedly learned of it" [*Id*. at 5]. Because Relator did not include any additional exhibits with his proposed Third Amended Complaint, Defendant argues that any additional details Relator uncovered are based on the documents that he has possessed since at least 2022 [*Id*.]. With respect to the Rusafa OCNs allegations, Defendant argues that "Relator does not otherwise describe the OCNs or explain what new evidence has surfaced about any OCNs" [*Id*. at 6]. According to Defendant, its "use of OCNs on the Rusafa contract is not newly 'uncovered' information" as it "produced the Rusafa proposal to the Government on March 28, 2019" and Relator had access to this document [*Id*.]. Defendant submits that its "Rusafa proposal describes [its] proposed labor force as including OCNs" [*Id*.]. It contends that "OCNs constitute an entirely separate labor category from the Askar-recruited TCNs that were the subject of the [Second Amended Complaint]" and that "Relator has been on notice for years that [Defendant] used OCNs on Rusafa, but only now seeks to extend his fraud claims to a new labor group" [*Id*. at 7 (emphasis omitted)].

Moreover, Defendant asserts that "Relator also seeks to add allegations that [it] failed to pay home leave to TCNs under Rusafa, based on information that has been available for at least several months" [*Id*.]. While the Third Amended Complaint "cites the Rusafa Source Selection Decision Document ("SSDD") in alleging that [Defendant] 'falsely told the selection authority for Rusafa that it would provide home leave to its employed security workers[,]'" Defendant claims that "[t]he SSDD is consistent with [its] proposal—which Relator has had for years—where [Defendant] proposed home leave benefits for TCNs" [*Id*. at 7–8 (citation omitted)]. According to Defendant, "Relator cannot credibly claim to have only recently learned of this information" [*Id*. at 8].

3

Case 3:10-cv-00204-TRM-DCP   Document 249   Filed 05/06/24   Page 3 of 10   PageID #: 7505

Further, Defendant asserts that "Relator's third category of proposed amendments would significantly expand the [Second Amended Complaint's] Task Order 21 domestic travel and lodging fraud claims to cover all other contracts presently at issue" [*Id.* (citation omitted)]. Defendant argues that Relator provides no citations to the "newly discovered information in support" of this amendment [*Id.*]. "Since filing his original complaint in 2010," Defendant states, "Relator's allegations regarding travel and lodging expenses have always been limited to Task Order 21 and domestic travel" [*Id.* (citation omitted)]. Defendant asserts, "Relator's proposed amendment now seeks to expand his travel/lodging fraud theory to dozens of other contracts and task orders involving overseas travel" [*Id.* (citation omitted)]. This is not a clarification, Defendant argues, but "a significant change that adds entirely new claims that require potentially extensive additional discovery and analysis" [*Id.*]. Defendant adds that these claims are also futile under the particularity requirement in Rule 9(b) of the Federal Rules of Civil Procedure [*Id.* at 9]. According to Defendant, "Relator does not include a single allegation describing purported travel fraud on any of the contracts performed in Iraq or Afghanistan" [*Id.*].

Finally, Defendant argues that the "proposed amendments at this late juncture are extremely prejudicial because they would necessarily require [an] extension of the fact and expert discovery deadlines, and delay dispositive motions and trial" [*Id.* at 10 (citation omitted)].

Relator filed a reply in support of his motion [Doc. 226]. Because Relator timely filed his motion pursuant to the Scheduling Order, he argues this defeats any argument that he was unreasonably delayed in moving to amend [*Id.* at 2]. Even so, he claims that he did not act with undue delay in filing his motion [*Id.* at 3]. Relator argues that his "proposed Third Amended Complaint makes very few substantive changes from the Second Amended Complaint" [*Id.*]. With respect to the amendments regarding the OCNs as W-2 employees on the Rusafa Contract, Relator

4

explains that he "received the [Overseas Services Agreements ("OSAs")] related to the Rusafa project in December 2023, along with thousands of other documents, and his expert completed his accounting review in late February 2024" [*Id*. at 4]. He filed his instant motion on March 4, 2024 [*Id*.]. Relator notes that other documents were not produced unitl late 2023 or early 2024, noting that at one hearing, "the Court ordered [Defendant] to investigate the cost information contained within the Deltek system and communicate to Relator's counsel the parameters and fields available for generating reports" [*Id*.]. The day before this hearing, Relator states, Defendant produced 100,000 pages of documents, which included the OCN OSAs at the Rusafa sites" [*Id*. at 5 (citation omitted)]. Relator argues that "[t]hese agreements show that [Defendant] hired OCNs on an independent-contractor basis rather than a W-2 basis" [*Id*. (citation omitted)]. "Prior to [Defendant's] December 6, 2023 production," Relator asserts that he had not received an OCN OSA for the Rusafa Contract, and he "was not able to have an expert conduct a complicated accounting review of cost accounting documents due to [the] lack of [Defendant's] documents" [*Id*.]. He argues that his experts had to analyze these documents, which took a few months because the documents "involved not only the Rusafa Contract but the other eight contracts at issue" [*Id*.]. In addition, Relator states that his suspicions regarding the Rusafa Contract were confirmed on March 1, 2024, when Bill Pearse, Defendant's former program manager, "testified that the OCNs working on the Rusafa Contract were not [Defendant] employees as [Defendant] had intimated to the Government" [*Id*. at 6.]. "Prior to this deposition," Relator asserts that he "lacked sworn proof to substantiate the accounting records' suggestion that the ONCs were not [Defendant] employees" [*Id*.].

With respect to the home leave amendment, Relator states that he received the relevant source-selection materials on May 8, 2023; however, he did not receive "affidavits from Rusafa

5

source-selection authorities [until] January 29, 2024" [*Id.* at 7]. He was unaware of these affidavits, which prompted him "to closely review the source-selection process and documents from the Rusafa Contract" [*Id.*]. "Even then," Relator asserts, "only an expert accountant's review of [Defendant's] accounting documents could confirm that [Defendant] never paid for any home-leave airfare as promoted" [*Id.*]. He concludes that while he had some documents, he "could not confirm that [Defendant] never paid for home leave for its TCNs until he had sufficient documents and knowledge of [Defendant's] home-leave practices and the opportunity for his accounting expert to review [Defendant's] airfare expenditures, because the expert accounting was necessary to establish that [Defendant] had only incurred costs for home leave (i.e., airfare costs) for W-2 ex-pat employees and not for TCNs" [*Id.* (footnote omitted)].

With respect to the third category of amendments, Relator states that "[Defendant] misinterprets the changes [he] seeks to make to Count III" [*Id.*]. "[He] does not allege that [Defendant] perpetuated travel fraud on all contracts" [*Id.*]. According to Relator, the changes are to "clarify that the presentment claim covers the false presentment of all of the previously pled frauds on all contracts" and not that the "travel and per diem fraud extended to contracts other than [Task Order] 21" [*Id.* at 8].

Relator argues that Defendant cannot claim surprise and prejudice because its experts opined on the employment status of OCNs and the home-leave benefits [*Id.* at 8–9]. In addition, Relator asserts that Defendant's expert is reviewing his expert's opinion in order to prepare a proper rebuttal report. Relator denies that allowing the amendments will require the deadlines to be extended [*Id.* at 9–10].

## II. ANALYSIS

The Court finds that Plaintiff has established good cause to file a Third Amended Complaint. Under Federal Rule of Civil Procedure 15, courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether justice requires an amendment "is committed to the district court's discretion." *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986) (citations omitted). Despite the liberality of Rule 15(a)(2), a court may deny a motion to amend if the court finds "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Scheib v. Boderk*, No. 3:07-CV-446, 2011 WL 208341, at *2 (E.D. Tenn. Jan. 21, 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Defendant objects to Plaintiff's amendments, stating that he acted with undue delay that will prejudice it. As an initial matter, Plaintiff's motion is timely under the Scheduling Order. The Scheduling Order set the deadline to amend pleadings on March 4, 2024 [Doc. 150 p. 2]. "When a plaintiff moves to amend its complaint within the deadline listed in the Court's scheduling order, . . . such [a] request does not in and of itself create substantial prejudice to the opposing party." *Hamm v. FCA US LLC*, No. 2:19-CV-169, 2020 WL 13443062, at *2 (E.D. Tenn. Dec. 15, 2020) (citation omitted); *see also L.V. v. City of Maryville*, No. 3:16-CV-508, 2017 WL 4293233, at *3 (E.D. Tenn. Sept. 27, 2017) ("In this vein, the Court is unwilling to accept an argument that a party's compliance with its Scheduling Order creates a scenario in which substantial prejudice can befall another party. A scheduling order, in fact, has the opposite effect, resulting in 'the orderly preparation of a case for trial.'" (citation omitted)). Indeed, the deadline for amending the pleadings should not have "take[n] [Defendants] by surprise." *L.V.*, 2017 WL 4293233, at *3.

7

Even so, the Court has considered whether Plaintiff acted with undue delay such that it will cause prejudice to Defendant. "[D]elay alone does not justify denial of leave to amend." *Scheib*, 2011 WL 208341, at *2 (quoting *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)); *see also Combs v. United States*, No. 2:04-CV-306, 2008 WL 11452361, at *2 (E.D. Tenn. July 16, 2008) ("[C]ourts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party." (collecting cases)). "At some point, however, delay becomes undue, placing an unwanted burden on the court, or . . . prejudicial, placing an unfair burden on the opposing party." *Scheib*, 2011 WL 208341, at *2 (quoting *Morse*, 290 F.3d at 800). As explained in *Phelps v. McClellan*:

> In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.

30 F.3d 658, 662–63 (6th Cir. 1994) (citation omitted). "The longer the period of unexplained delay, the less will be required of the nonmoving party in terms of showing of prejudice." *Scheib*, 2011 WL 208341, at *2 (quoting *Phelps*, 30 F.3d at 663). It is only when a party acts with delay that causes prejudice to the nonmoving party that a court should deny a request to amend. *Combs*, 2008 WL 11452361, at *2.

Defendant claims that Plaintiff possessed the documents for which he claims support the amendments.[1] Plaintiff explains, however, that with respect to the amendment regarding the

---

[1] Defendant argues that Plaintiff did not identify the documents in its opening motion, and therefore, to the extent he tries to do so in his reply, "the Court should disregard any such arguments" [Doc. 224 p. 5 n.5]. Not identifying the specific documents, however, is not a ground for finding that he waived his argument that additional discovery supports the filing of his amendments. Indeed, in his motion, Relator argued that he uncovered additional details from reviewing Defendant's documents. In light of Defendant's argument that he did not identify the documents, he did so in his reply brief—the very purpose of a reply brief. *See* E.D. Tenn. L.R.

8

Case 3:10-cv-00204-TRM-DCP   Document 249   Filed 05/06/24   Page 8 of 10   PageID #: 7510

OCNs, he received relevant documents on December 7, 2023, but did not learn of the extent of Defendant's alleged overbilling until his experts reviewed these documents and analyzed the financial data. Similarly, with respect to the home leave amendment, Relator acknowledges that he possessed some documents on May 8, 2023, but he did not receive "affidavits from Rusafa source-selection authorities" until January 29, 2024 [Doc. 226 p. 7 (citation omitted)]. In addition, he needed an expert's opinion to support his allegation that Defendant never paid any home-leave airfare.

Defendant argues that it will be prejudiced because the proposed amendments "would necessarily require [an] extension of the fact and expert discovery deadlines, and delay dispositive motions and trial" [Doc. 224 p. 10 (citation omitted)]. The Court is not convinced that these amendments will cause any delay. As Relator represents, Defendant's expert addressed the subject matter of the amendments in his expert report, and Relator's expert did as well [Doc. 226 pp. 8–9]. Defendant states that "Relator's proposed amendments regarding TCN home benefits under Rusafa would require additional discovery into [Defendant's] proposal and pricing associated with TCN benefits, the extent to which the Government considered those proposed benefits in its award decision, actual [Defendant] incurred costs for TCN benefits, and deposition testimony and expert analysis regarding the same" [Doc. 224 p. 11]. But most of the categories should be information that Defendant already possesses. The Court finds Defendant's argument not well taken.[2]

---

7.2(a) ("A reply brief shall not be used to reargue the points and authorities included in the opening brief, but shall directly reply to the points and authorities contained in the answering brief.").

[2] The Court does not need to consider Defendant's argument that the proposed amendments on travel/lodging fraud are futile because Relator represents that he "does not allege that [Defendant] perpetuated travel fraud on all contracts" [Doc. 226 p. 7]. Instead, his "change is purely an attempt to clarify that the presentment claim covers the false presentment of all of the previously pled frauds on all contracts. Relator does not now allege that travel or per diem fraud extended to contracts other than [Task Order] 21" [*Id.* at 8].

### III. CONCLUSION

For the reasons stated above, the Court **GRANTS** Relator's Motion for Leave to File Third Amended Complaint [**Doc. 220**]. Relator **SHALL** file his operative pleading in CM/ECF on or before **May 8, 2024.**

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge